# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **EDWARD JAMES BEYER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 3:16-cv-2736 |
| ) | Judge Aleta A. Trauger |
| **VESTAGEN PROTECTIVE** ) | |
| **TECHNOLOGIES, INC., F/K/A** ) | |
| **VESTAGEN TECHNICAL TEXTILES,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

On November 28, 2017, the court held a bench trial on the two claims raised by Edward James Beyer in his Complaint (Docket No. 1) against Vestagen Protective Technologies, Inc., f/k/a Vestagen Technical Textiles, Inc. ("Vestagen"). At trial, the court heard testimony from Beyer, Vestagen CEO Bill Bold, and former Vestagen CFO and head of human resources, Tony Pruna.

## I. FINDINGS OF FACT

Vestagen develops and markets antimicrobial, fluid-repellant medical garments, such as hospital scrubs. It was founded in 2009. By 2015, Vestagen had spent a substantial portion of its investment capital without developing a large base of institutional clients. Vestagen's long-term viability as an enterprise was contingent on its ability to grow and maintain a sufficient revenue-generating client base.

As of 2015, Beyer held the position of Vice President of Corporate Sales at Masimo Corporation ("Masimo"), a medical device company. Beyer and Vestagen began exploring the possibility of Beyer's leaving Masimo to work at Vestagen. At around the same time, Vestagen

was also exploring the prospect of bringing Bold on as its new CEO. At the suggestion of Bold, both Beyer and Bold had severance provisions in their contracts.

Beyer has speculated in this litigation that, although Bold played a role in the formulation of Beyer's severance provision, Bold never intended for Vestagen to honor that provision if Bold, as CEO, ever chose to terminate Beyer. Beyer, however, has not established by a preponderance of the evidence that Bold, or any other individual associated with Vestagen, had any present intention not to honor Beyer's severance provision. Although the court finds Beyer's testimony on this issue to credibly state his current beliefs about Bold's earlier state of mind, there is insufficient evidence for the court to treat Beyer's characterization as anything other than speculation.

On November 23, 2015, Beyer signed an offer letter accepting employment as Vestagen's Senior Vice President of Sales. (Pl. Ex. 2.) Bold also accepted Vestagen's offer and became CEO. In addition to his role as CEO, Bold was a member of Vestagen's board of directors ("Board"). Other members of the Board included Randy Scott and Dale Pfost.

Beyer's written employment agreement with Vestagen provided that, if Beyer was "subject to Involuntary Termination," he would be "eligible for severance pay including (i) a lump sum in cash equal to 6 months of [his] base salary; and (ii) 3 months continued payment of [his] medical premium." (*Id.* at 2.) It is undisputed that the lump sum severance would have amounted to $112,500. The agreement defined "Involuntary Termination" to refer to either "(a) [Beyer's] Termination Without Cause or (b) [his] Resignation for Good Reason." (*Id.*) The agreement defined "Cause" as follows:

> "Cause" means (a) your unauthorized use or disclosure of Vestagen's confidential information or trade secrets, which use or disclosure causes material harm to Vestagen, (b) your material breach of any agreement between you and Vestagen that could reasonably be expected to result in material harm to Vestagen, (c) your

2

material failure to comply with Vestagen's written policies or rules that could reasonably be expected to result in material harm to Vestagen, (d) your conviction or, or you plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) your gross negligence in the scope of your employment that could reasonably be expected to result in material harm to Vestagen, (f) your willful misconduct in the scope of your employment, (g) your continuing failure to perform assigned duties after receiving written notification of the failure from the Board or (h) your material failure to cooperate in good faith with a government or internal investigation of Vestagen or its directors, officers or employees, if Vestagen has requested your cooperation; provided that, other than with respect to clauses (a) and (d), grounds for "Cause" shall not exist unless Vestagen provides notice to you of such condition and you fail to cure such condition within ten business days following your receipt of such notice.

(*Id.*) Beyer began work at Vestagen in early January 2016. Throughout Beyer's employment, he reported directly to Bold.

Beyer received a copy of Vestagen's employee handbook early on in his employment. (Pl. Ex. 3.) The handbook included a company e-mail policy forbidding, *inter alia*, "[s]ending threatening messages" and "[s]ending messages that could damage the image or reputation of Vestagen." (*Id.* at 39–40.) The handbook also included policies regarding employees' duty to protect confidential information and not to engage in harassment about, relating to, or because of a person's age or disability. (*Id.* at 31, 33.) The handbook stated that "[e]mployees are expected to perform their job responsibilities in a manner that advances the interests of the Company and to complete the goals and objectives set for their position." (*Id.* at 41.)

On March 10, 2016, Beyer sent an email to Susan Dolan, an employee of Colorado Children's Hospital, a potential Vestagen customer. Beyer inadvertently attached a document containing confidential information about Vestagen's sales tactics. (D. Exs. 4, 4b.) At trial, however, Bold conceded that his eventual decision to terminate Beyer was not due to the March 10 disclosure.

3

On March 22, 2016, Beyer had an email exchange with Vestagen President and founder Ben Favret that Favret construed as threatening. (D. Ex. 18.) On June 30, 2016, Beyer had an email exchange with Vestagen employee Marc Lessem, in which Beyer made a comment that could be construed as derogatory toward Lessem and insensitive to individuals with mental health conditions. (D. Ex. 5.) In both instances, Bold, upon learning of the emails, made Beyer aware of the fact that the tone and/or contents of the emails had been inappropriate. Based on the court's review and weighing of the testimony by Bold and Beyer, however, the court finds that, in neither instance, was Beyer given notice that could be fairly construed as informing him that Vestagen considered his conduct a ground for termination for which he had a ten-day cure period under his employment agreement. The court's finding is not premised on any assumption that oral communications are categorically inadequate for conveying such notice.

On June 6, 2016, Beyer sent an email to a representative of Dallas Children's Hospital that the recipient apparently considered insulting. (D. Ex. 16.) Beyer, upon learning of how the recipient had reacted to the email, apologized. (D. Ex. 17.) Based on the court's review of Beyer's original email, the court concludes that the email, though susceptible of being read as condescending, would not be construed by a reasonable person to amount to a substantial departure from acceptable professional norms. Furthermore, based on the court's review and weighing of the testimony by Bold and Beyer, the court finds that neither Bold nor any other representative of Vestagen gave Beyer notice that a reasonable employee would construe as informing him that Vestagen considered the email a ground for termination for which Beyer had a ten-day cure period under his employment agreement.

Bold specifically testified that he repeatedly told Beyer that Beyer's job was at stake because of his actions. The court finds a lack of credibility to Bold's claim to have made such

4

statements with the force and frequency he asserted at trial. The court finds that none of Bold's communications to Beyer was sufficient to place a reasonable employee on notice that Vestagen considered him to have committed an act that Vestagen considered cause for termination.

Throughout Beyer's employment with Vestagen, he had responsibilities related to the development and maintenance of the company's "sales funnel," a process and document for tracking the company's client development activities. Bold credibly testified that he grew dissatisfied with Beyer's handling of the sales funnel in a number of respects. Bold also identified other instances in which he found Beyer's conduct or performance to be lacking. No evidence presented at trial, however, suggests that Beyer was ever given written notification by the Board of a failure to perform his duties, as contemplated by ground (g) for for-cause termination. No evidence was presented that the Board, acting as a body, took any steps to send such notification. Although Bold testified that he considered his e-mails and other communications on certain topics to be "on behalf of the Board" because he was a member of the Board, no credible evidence suggested that those emails were anything beyond communications from Bold himself, in his capacity as CEO.

In August 2016, Bold and Beyer had a series of email exchanges regarding sales forecasting information and processes that Beyer had prepared or compiled. (D. Exs. 6–12.) The exchanges can be reasonably construed as Bold's expressing displeasure with Beyer's performance. The emails, however, give no indication that Bold was communicating on behalf of the Board as a body. Further, nothing in the emails could be reasonably construed as putting Beyer on notice that Vestagen considered him subject to any of the grounds for termination in his employment contract. These exchanges, like the other communications between Beyer and Bold

5

presented to the court, bear all of the hallmarks of ordinary corrective supervision and none of the hallmarks of a formal notice of a condition giving rise to grounds for termination.

Although Bold has credibly testified that he was unhappy with various aspects of Beyer's performance, Beyer has shown, by a preponderance of the evidence, that Vestagen lacked grounds for concluding that any of his alleged deficiencies was the result of a conscious neglect of his duties or a callous indifference to consequences. Beyer has also shown, by a preponderance of the evidence, that Vestagen lacked grounds for concluding that Beyer ever voluntarily and intentionally engaged in a dereliction of duty or any unlawful, dishonest, or improper behavior.

> On September 20, 2016, Bold wrote an email to Board members Scott and Pfost, stating:
>
> Randy and Dale, I sent this note to Jim earlier after getting some slides from him that contained very little substance. I've reached the point where it is evident he is not the Sales Leader we need. I have taken over THD as Cole will not return his call, I have been working with/managing Brian since day one and the others have a rough time interacting with Jim. As you both know, John Black, his friend and his hire resigned a month ago.
>
> Here is my plan. I need to run the Sales Org as I can do it easily and whip the process into shape literally in 30 days – it still involves VNOW as it can be very successful but discipline is key and Jim has none.
>
> In light of John leaving I have a void in the Central US and was going to offer it to Jim as an individual contributor as I do believe he can be managed if he is only managing himself. He may or may not take it but he does have the knowledge so we do not have to retrain another FTE. Salary would be dialed back by $50k per year.
>
> I will not pay his 6-month severance and this can be a way to not have to or to negotiate that back to a few months.
>
> Let me know if you want to discuss as I know timing is not good but I can spin it to investors as it is a positive.
>
> Finally I do believe we will hit our 2016 number so we have a slight bit of breathing room based on what Brian is doing at NW.

6

Case 3:16-cv-02736   Document 36   Filed 12/08/17   Page 6 of 11 PageID #: 215

(D. Ex. 20.) Based on both the specific contents of the email and the context presented at trial, the court concludes that the email is strongly suggestive of the conclusion that Bold made the decision to deny Beyer's severance without reference to Vestagen's satisfaction of any specific enumerated ground for a "cause" termination in Beyer's employment agreement. Bold flatly states, "I will not pay his 6-month severance" and acknowledges the need for "a way to not have to or to negotiate [the severance] back." If Vestagen had satisfied the requisites for for-cause termination as of September 20, 2016, there would be no need to negotiate the severance down or to create a "way to not have to" pay it.

On September 22, 2016, Bold telephoned Beyer and informed him that he was terminated from his position as Vice President of Sales. Bold suggested the possibility of Beyer's continuing in a regional sales role, which Beyer declined. Vestagen stopped paying Beyer's healthcare premiums shortly thereafter, and, to date, Beyer has not been paid any severance. Pruna testified that, prior to Beyer's termination, there was no documentation of discipline or notice of cause for termination in his HR file and that the "necessary steps" for a termination for cause were not taken.

## II. CONCLUSIONS OF LAW

### A. Count I

Count I is a claim for breach of contract arising out of Vestagen's failure to pay Beyer a lump sum severance payment following his involuntary termination from Vestagen. In Tennessee, a claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract and (3) damages caused by the breach of contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). There is no dispute in this case as to the first element, nor is there any

7

dispute that, if Beyer can prevail on the second element under his theory of the case, he will also prevail on the third. Accordingly, whether Beyer prevails on Count I comes down to whether Vestagen violated the contract by failing to pay his severance, which, in turn, depends on whether Beyer has shown by a preponderance of the evidence that Vestagen's termination of him failed to meet any of the possible definitions of termination for cause.

### *1. Notice*

Vestagen concedes that its termination of Beyer was not based on grounds (b), (d) or (h). At trial, Bold conceded that Beyer's months-earlier inadvertent sharing of confidential information was not the basis for his termination. Vestagen therefore cannot rely on ground (a). By the terms of the employment agreement, each of the remaining grounds—(c), (e), (f), and (g)—can only serve as cause for termination if "Vestagen provide[d] notice to [Beyer] of such condition and [Beyer] fail[ed] to cure such condition within ten business days following [his] receipt of such notice."

The court construes the agreement's notice-and-cure provision to require more than a mere communication, by Bold to Beyer, that Bold was unhappy with some action by Beyer or some aspect of Beyer's performance. Because the enumerated grounds for termination can be construed broadly, the notice-and-cure provision constitutes a central part of the protection actually afforded to an employee thereunder. If Vestagen could satisfy that provision through ordinary supervisory statements that a rational employee would not construe as notice of grounds for termination, it would vitiate the protection offered by the provision as written. Accordingly, the court construes the agreement to require notice that a reasonable employee would construe as informing him that Vestagen considered the employee to have committed some act that constituted cause for termination for which the employee had a ten-day cure period. Because the

8

court has held that no statement by any Vestagen representative to Beyer prior to September 22, 2016, satisfied that condition, Beyer has shown that his termination was not for cause, as that term was defined in the agreement, and that Vestagen, therefore, was obligated to pay his severance.

### *2. Merits*

Beyer has also shown, by a preponderance of the evidence, that most of Vestagen's attempts to evoke the contractual grounds for dismissal would fail on the merits.

#### *i.     Ground (e)—your gross negligence in the scope of your employment that could reasonably be expected to result in material harm to Vestagen*

"Gross negligence has been defined as arising from 'a conscious neglect of duty or a callous indifference to consequences.'" *Kuhn v. Panter*, No. M2015-00260-COA-R3-CV, 2015 WL 7720271, at *3 (Tenn. Ct. App. Nov. 25, 2015) (quoting *Conroy v. City of Dickson*, 49 S.W.3d 868, 871 (Tenn. Ct. App. 2001)). Because the evidence has shown no basis for Vestagen to have concluded that Beyer demonstrated a conscious neglect of duty or a callous indifference to consequences, Vestagen cannot rely on ground (e) to justify termination for cause.

#### *ii.    Ground (f)—your willful misconduct in the scope of your employment*

Courts have recognized a number of tests for "willful misconduct," depending on the particular situation in which the concept has arisen. *See, e.g.*, *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012) (setting forth test for willful misconduct under worker's compensation law); *In re Carolina M.*, No. M2014-02133-COA-R3-JV, 2016 WL 6427853, at *5 (Tenn. Ct. App. Oct. 28, 2016) (discussing willful misconduct in the context of criminal contempt). Generally speaking, though, the court construes Beyer's employment agreement to define willful misconduct to require "[m]isconduct committed voluntarily and intentionally," with "misconduct" defined as "[a] dereliction of duty [or] unlawful, dishonest, or improper

9

behavior." MISCONDUCT, Black's Law Dictionary (10th ed. 2014). Because Beyer has shown that Vestagen lacked a basis for such grounds, Vestagen cannot rely on ground (f) to justify termination for cause.

> ### iii. *Ground (g)—your continuing failure to perform assigned duties after receiving written notification of the failure from the Board*

Because Beyer has shown by a preponderance of the evidence that he never received written notification of a continuing failure to perform his duties from the Board as a body, Vestagen cannot rely on ground (g) to justify termination for cause.

> ### iv. *Ground (c)— your material failure to comply with Vestagen's written policies or rules that could reasonably be expected to result in material harm to Vestagen*

Because Vestagen's employee handbook contains a wide array of policies, some of them vague and aspirational, it could be contended that Beyer, at times, acted contrary to his obligations thereunder. Whether any of those instances rose to the level of what a reasonable person would expect to cause material harm to Vestagen, as required for for-cause termination, would depend, in significant part, on the minimum threshold for "material harm." Because Beyer was never afforded the required notice and opportunity to cure, however, the court need not decide whether Vestagen could have relied on ground (c) to terminate him for cause if the appropriate procedures had been followed.

## B. Count II

Count II is a claim for promissory fraud based on Vestagen's inducing Beyer to take a position at Vestagen by falsely promising to pay him a severance. "To prevail on a claim of promissory fraud, the plaintiff must establish '(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action

with no present intent to perform.'" *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 653 (E.D. Tenn. 2011) (citing *Houghland v. Houghland*, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006)). Under Tennessee law, if a plaintiff seeks to rely on promissory fraud to set aside or reform an instrument, he must establish fraud by clear and convincing evidence. If, instead, the plaintiff has pled promissory fraud as a "tort of fraud in an action for damages," then the plaintiff is only required "to meet a preponderance of the evidence burden of proof." *Noblin v. Christiansen*, No. M2005-01316-COA-R3-CV, 2007 WL 1574273, at *11 (Tenn. Ct. App. May 30, 2007) (citing *Jarmakowicz v. Suddarth*, No. M1998-00920-COA-R3-CV, 2001 WL 196982, at *10 (Tenn. Ct. App. Feb. 28, 2001)).

Because Beyer has not shown, by a preponderance of the evidence, that Vestagen or any agent thereof lacked an intent to honor Beyer's severance provision at the time Beyer accepted the offer of employment, Vestagen is entitled to judgment on Count II.

### III. CONCLUSION

For the foregoing reasons, the court will enter judgment in favor of Beyer on Count I for breach of contract in the amount of $112,500, plus prejudgment interest, and in favor of Vestagen on Count II, the promissory fraud count.

An appropriate order will enter.

ENTER this 8th day of December 2017.

ALETA A. TRAUGER
United States District Judge

11

Case 3:16-cv-02736 Document 36 Filed 12/08/17 Page 11 of 11 PageID #: 220